**CARTWRIGHT INTERNATIONAL VAN LINES, INC., et al.,**
**Plaintiffs,**

v.

**Lurita Alexis DOAN, Administrator of General Services Administration,**
**Defendant.**

**Civ. No. 07–1454 (EGS).**

United States District Court,
District of Columbia.

Dec. 5, 2007.

---

Alan F. Wohlstetter, Denning & Wohlstetter, Washington, DC, for Plaintiffs.

Robin Michelle Meriweather, Assistant United States Attorney, Washington, DC, for Defendant.

## MEMORANDUM OPINION

EMMET G. SULLIVAN, District Judge.

This case arises out of a dispute between the General Services Administration ("GSA") and Cartwright International Van Lines ("Cartwright") and Foremost Forwarders, Inc. ("Foremost") (collectively "plaintiffs") regarding overcharges billed for plaintiffs' shipments of household goods to military bases and military airports. Pending before the Court is plaintiffs' Motion for a Preliminary Injunction and defendant's Motion to Dismiss or in the Alternative to Transfer the Case to the Court of Federal Claims. Upon consideration of the Motions, the responses and replies thereto, the applicable law, and the entire record, the Court **DENIES** plaintiffs' Motion for a Preliminary Injunction, **DENIES** Defendant's Motion to Dismiss, and **GRANTS** defendant's Motion to Transfer this Case. For the reasons stated herein, this case shall be transferred to the Court of Federal Claims.

## I. BACKGROUND

Plaintiffs are transportation service providers ("TSPs") exclusively engaged in the forwarding of military household good shipments through a program administered by the Department of the Army's Surface Deployment and Distribution Command ("SDDC"). Am. Compl. ¶ 8. The shipments at issue in this case are known as "Code J" shipments, which involve plaintiffs' movement of household goods to and from military bases and military airports. *Id.* at ¶ 9. Authorized charges for those services are set forth in single factor rates (SFRs) filed by plaintiffs and other carriers with the SDDC. *Id.* The government periodically publishes Rate Solicitations which set forth certain additional surcharges that TSPs may "pass through" to the government. These surcharges do not apply to all shipments and are not included in the SFRs. *Id.* The terms of each TSP's transportation contract provides the basis for determining the correctness of its bills and whether a carrier has inappropriately billed the government for surcharges not allowed by the Solicitation. Def.'s Ex. 1, ¶ 5.

Plaintiffs and other TSPs electronically submit their bills to the Department of Defense Finance and Accounting Service ("DFAS") through an Electronic Data Interface ("EDI"). *Id.* Bills submitted via EDI are paid without prepayment audit or

verification and are effectively paid automatically upon submission. Def.'s Mem. at 5. DFAS subsequently provides the EDI data to GSA to conduct a post-payment audit of a TSP's bills. *Id.*

## A. Statutory and Regulatory Framework

Under the Transportation Act of 1940, the Administrator of GSA has the authority to conduct pre—or post-payment audits of transportation bills of any Federal Agency to verify their correctness. 31 U.S.C. § 3726(b). If the post-payment audit process reveals that the government has paid a carrier or freight forwarder more than the allowable rate, the government may recoup the overpayments via offsets against future amounts due to that carrier. Offsets may be imposed up to three years after the original overpayment was made. *Id.* § 3726(d). GSA's regulations implementing the Transportation Act authorize the agency to issue a Notice of Overcharge ("NOC") if it determines that a TSP owes the government a debt and to offset overcharges from other payments due to that TSP. Def.'s Mem. at 3. Specifically:

> When GSA performs a post-payment audit, the GSA Audit Division has the delegated authority to implement the following procedures:
>
> (a) Audit selected TSP bills after payment;
>
> (b) Audit selected TSP bills before payment as needed to protect the Government's interest (i.e., bankruptcy, fraud);
>
> (c) Examine, settle, and adjust accounts involving payment for transportation and related services for the account of agencies;
>
> (d) Adjudicate and settle transportation claims by and against agencies;
>
> (e) Offset an overcharge by any TSP from an amount subsequently found to be due that TSP;
>
> (f) Issue a Notice of Overcharge stating that a TSP owes a debt to the agency. This notice states the amount paid, the basis for the proper charge for the document reference number, and cites applicable tariff or tender along with other data relied on to support the overcharge. A separate Notice of Overcharge is prepared and mailed for each bill.

41 C.F.R. § 102–118.435.

A TSP may dispute a notice of overcharge by filing a written request for reconsideration with GSA's Audit Division. *Id.* § 102–118.600. If the request is denied, then GSA is authorized to begin offsetting the debt against future amounts owed that carrier. Following the offset, the TSP may submit a written claim to GSA requesting a refund with an explanation of the basis on which the TSP believes the refund should be granted. *Id.* § 102–118.645; *see also* Def.'s Ex. 1 at 3. If GSA disallows the claim, the agency will issue a Settlement Certificate informing the TSP of the denial. *Id.* § 102–118.620. A TSP desiring reconsideration of a settlement action can submit a request for review by the Administrator of GSA. *Id.* § 102–118.625. If the request for review is also denied, then the TSP can either seek review in the Civilian Board of Contract Appeals ("CBCA") or file a claim in the Court of Federal Claims. *Id.* § 102–118.650.

## B. Plaintiffs' Overcharge Dispute with GSA

When conducting the post-payment audits for several of plaintiffs' EDI billings, GSA auditors determined that the government had paid plaintiffs and other TSPs transportation charges that exceeded the amounts allowable under the SDDC Inter-

national Rate Solicitation. Def.'s Mem. at 5. Specifically, GSA alleges that certain surcharges coded as "WAR" and "CON" were being billed inconsistently with the terms of the solicitation. "WAR" is the war risk surcharge which the SDDC has defined as "insurance coverage for loss of goods resulting from an act of war or as a result of the vessel entering the war risk area when billed by ocean/air TSP." *Id.* at 6. "CON" is the port congestion surcharge, defined as an "extra charge that is billed to the TSP for controlling the congestion of trucks/vessels entering/departing the port." *Id.*

As a result of the audits, on April 3, 2006, GSA issued Notices of Overcharge ("NOCs") to plaintiffs and 36 other carriers based on the alleged misuse of the "WAR" and "CON" surcharges. *Id.* The NOC issued to Cartwright indicated an overcharge of $241,210.84 while the NOC issued to Foremost indicated an overcharge of $1,202,698.45 *Id.* Plaintiffs protested the offsets, contending that GSA had based its decision on an incorrect interpretation of the SDDC's rate solicitation and that the WAR and CON surcharges were properly applied to their Code J Shipments. On June 23, 2006, GSA denied the protest, sustained the NOCs, and recommended that Cartwright enter into a repayment plan. Plaintiffs' attorney and GSA exchanged several letters and emails over the course of the next year discussing the disputed charges. GSA temporarily suspended the offset and deduction process during the course of these negotiations. *Id.* at 8.

On July 25, 2007 GSA resumed offsetting the disallowed charges from amounts due on plaintiffs' bills. Plaintiffs then filed this action, alleging that GSA has violated its own regulations by offsetting monies from plaintiffs on a basis other than that stated in the NOCs. Am. Compl. ¶ 1. Plaintiffs claim that over the course of the negotiations regarding the propriety of the offsets, GSA put forth an alternate justification to sustain the offsets, other than the improper billing of the WAR and CON surcharges on Code J shipments. Plaintiffs state that GSA is actually basing the offsets on the contention that the charges at issue should have been billed as "waiting time" under Item 503 of the Rate Solicitation, rather than as they were, as WAR or CON surcharges under Item 433 of the Solicitation. While plaintiffs also disagree with the merits of this interpretation, their main argument before this Court is that GSA is obligated to issue new NOCs stating the disputed charges should have been billed under Item 503 and then give the plaintiffs the opportunity to protest that rationale before any offsets are made. According to the complaint, "GSA has failed to accord plaintiffs the right to respond to the different grounds relied upon by defendant (but not set forth in the Notices of Overcharge) prior to the offsets being made." *Id.*

## II. ANALYSIS

### A. Plaintiffs' Motion for a Preliminary Injunction

Plaintiffs represent that GSA has collected a combined total of $501,370 to date via offset. Am. Compl. ¶ 1. Based on the outstanding NOCs, GSA intends to offset an additional $1,622,947 to recoup the plaintiffs' alleged debt. Plaintiffs seek an order of this Court "declaring that the action of GSA's Audit Division in offsetting monies from plaintiffs in violation of its own regulations, without according plaintiffs the opportunity to respond, is unlawful, arbitrary and capricious and an abuse of discretion in violation of the Administrative Procedure Act ('APA'), 5 U.S.C. § 706(2)(A)." *Id.* ¶ 3. Plaintiffs ask the Court to preliminarily

enjoin defendants from continuing to deduct monies from plaintiffs pursuant to Notices of Overcharge issued and to be issued until the basis for the overcharge is set forth in the Notices of Overcharge and plaintiffs are given the opportunity to respond before offset, as specifically provided for in GSA's Transportation Payment and Audit Regulations.

*Id.* ¶ 19. Plaintiffs contend they will suffer irreparable harm if GSA proceeds with its planned offsets and ask the Court to require GSA to issue new NOCs to which plaintiffs can respond before any further offsets are taken.

 A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton,* 391 F.3d 251, 258 (D.C.Cir.2004)(citing *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)). To warrant preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C.Cir.2006)(internal citations omitted). For the reasons articulated herein, the Court finds that it lacks subject matter jurisdiction over this dispute, and therefore plaintiffs' Motion for a Preliminary Injunction is **DENIED.**

## B. Defendant's Motion to Dismiss or in the Alternative to Transfer the Case

 Defendant has moved to dismiss the case based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Rann v. Chao,* 154 F.Supp.2d 61, 64 (D.D.C.2001). In evaluating a motion to dismiss for lack of subject-matter jurisdiction, the court must accept the complaint's well-pled factual allegations as true and construe all reasonable inferences in the plaintiff's favor. *Thompson v. The Capitol Police Bd.,* 120 F.Supp.2d 78, 81 (D.D.C.2000). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann,* 154 F.Supp.2d at 64 (internal citations omitted). In determining whether the plaintiff has met his burden, the Court may look to materials beyond the pleadings. *Bernard v. U.S. Dep't of Defense,* 362 F.Supp.2d 272, 277 (D.D.C.2005) (citing *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C.Cir.1992)).

Defendant's argument is threefold. First, GSA contends that because plaintiffs' claims are founded on government contracts, jurisdiction is proper in the Court of Federal Claims under the Tucker Act. Secondly, defendant claims that because the plaintiffs have a pending appeal with the Civilian Board of Contract Appeals ("CBCA") pertaining to the same NOCs, section 704 of the Administrative Procedure Act ("APA") prevents this Court from assuming jurisdiction. Finally, defendant argues that section 704 of the APA also bars jurisdiction in this Court because the Court of Federal Claims can provide plaintiffs an adequate remedy. As an alternative to dismissal, defendant moves the Court to transfer this case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. The Court agrees that this Court lacks subject matter jurisdiction over this dispute and that jurisdiction properly lies in the Court of Federal Claims.

## 1. Sovereign Immunity and the Administrative Procedure Act

 "Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity ... together with a claim falling within the terms of the waiver." *U.S. v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite to jurisdiction." *U.S. v. Navajo Nation,* 537 U.S. 488, 502, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003). Even when the federal government does waive its immunity from suit, "limitations and conditions upon which the Government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

 Plaintiffs invoke the waiver of sovereign immunity provided by the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* together with this Court's general federal question jurisdiction under 28 U.S.C. § 1331. Plaintiffs claim that APA section 702 waives sovereign immunity for suits against the government to "set aside agency action ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(a). While it is true that the APA has "broadened the avenues for judicial review of agency action," *Bowen v. Massachusetts,* 487 U.S. 879, 891–92, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), this Court's jurisdiction is strictly limited by the terms of the APA itself. "Congress restricted section 702's waiver of sovereign immunity by stating that nothing in the APA confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought

... The Tucker Act, 28 U.S.C. §§ 1346, 1491 operates as such a limitation of section 702 in cases based on contracts with the federal government." *Spectrum Leasing Corp. v. U.S.,* 764 F.2d 891, 892–93 (1985)(internal citations omitted). "It is clear from the APA's legislative history that section 702's waiver of sovereign immunity may not be used to circumvent the jurisdictional and remedial limitations of the Tucker Act." *Id.* at 893.

## 2. The Tucker Act

 The Tucker Act gives the Court of Federal Claims jurisdiction to hear monetary claims against the United States founded either upon an express or implied contract or upon a provision of the Constitution, or any Act of Congress, or any regulation of an executive department that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *U.S. v. Mitchell,* 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)(internal citations omitted). The Tucker Act is both a waiver of sovereign immunity and a grant of exclusive jurisdiction to the Court of Federal Claims to decide monetary claims, founded either upon an act of Congress or a contract with the United States, in excess of $10,000. *American Airlines, Inc. v. Austin,* 778 F.Supp. 72, 75 (D.D.C.1991). The "Little Tucker Act" grants concurrent Tucker Act jurisdiction to district courts where the amount in controversy is less than $10,000. 28 U.S.C. 1346(a)(2).

 The government argues that plaintiffs' claims fall under the Tucker Act because they are founded on government contracts and thus should be heard in the Court of Federal Claims. Plaintiffs counter that their claims are not contractually based and therefore jurisdiction properly lies here. Whether a claim is one "founded upon" a contract for purposes of the

Tucker Act "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C.Cir.1982). A court will not find that a particular claim is one contractually based merely because resolution of that claim requires *some* reference to a contract. *Spectrum Leasing,* 764 F.2d at 893 (emphasis in original).

*Spectrum Leasing* guides this Court's analysis of Tucker Act jurisdiction based on contract. In that case, a government contractor sought an order declaring that GSA had violated the contractor's rights under the Debt Collection Act and an injunction compelling the government to cease withholding payments due to the contractor via administrative offset. The district court dismissed the case for lack of subject matter jurisdiction and the contractor appealed. The D.C. Circuit upheld the dismissal and agreed that jurisdiction was proper in the Court of Federal Claims because the right to the disputed payments was "created in the first instance by the contract, not by the Debt Collection Act." *Id.* at 894. The Court concluded that while the "DCA might impose procedural requirements on the government having some impact on the contract, the Act in no way creates the substantive right to the remedy Spectrum seeks." *Id.*

In an attempt to distinguish *Spectrum,* plaintiffs insist that the source of their rights in this dispute is not the transportation contracts or Rate Solicitation under which they agree to move household goods for the Army. Pl.s' Opp'n at 8. ("Plaintiffs' complaint is not based on the existence of a contract and does not seek an injunction to enforce an existing contract.") Rather, plaintiffs argue their rights in this controversy arise under GSA's audit regulations themselves. *Id.* The Court disagrees. As in *Spectrum Leasing,* GSA's regulations confer no rights upon plaintiffs in the absence of their transportation contracts with the government. The process plaintiffs invoke is only relevant to their status as government contractors in the first place.

The remedy plaintiffs seek is also instructive. In addition to the declaratory order interpreting GSA's regulations, plaintiffs ask the Court to halt GSA's offsetting of money currently due to plaintiffs until GSA issues new NOCs. Am. Compl. ¶ 3. In support of their theory that this case is not founded on contracts, plaintiffs argue that an order of this Court would not result in the payment of money to plaintiffs. Pl.s' Reply at 8. However, that is precisely what this Court's order would do. Should this Court enjoin the offsets, GSA would be required to pay the full amount owed on plaintiffs' future bills as set by the terms of their transportation contracts, rather than the amount reduced by the pending offsets. As in *Spectrum,* Plaintiffs' right to any payment from the government at all, whether in full as charged, or in a lesser amount reduced by offset, is created in the first instance by their contracts, not by GSA's regulations.

 Furthermore, even if the Court found this action was not based on contract, assuming subject matter jurisdiction under the APA would still be improper because substantially the same issues are pending before the Civilian Board of Contract Appeals ("CBCA") and that body is empowered to grant full relief. "Where agency action is otherwise reviewable in court and an adequate remedy is available in connection with that review, the APA's waiver of sovereign immunity under section 702 is not available." *Kanemoto v. Reno,* 41 F.3d 641, 644 (Fed.Cir.1994).

After filing their Motion for a Preliminary Injunction, plaintiffs filed claims with the CBCA seeking recovery of money al-

ready offset, a halt to collection efforts, and the cancellation of the outstanding NOCs. *See* CBCA Claim of Foremost Forwarders, Inc., at 4. In conjunction with those proceedings, plaintiffs' counsel filed a brief in a related case arguing that GSA's defenses to plaintiffs' claims must be limited to the justification stated in the existing NOCs.[1] *See* Brief of American World Forwarders, Inc., CBCA 888–RATE (2007). In that brief, plaintiffs argue, "the failure of GSA to include any of the contentions now advanced in its response to the appeal pending with the Board has deprived American World of the opportunity to have its position on these new issues evaluated and reflected by GSA in a Settlement Certificate ..." *Id.* at 3.

In evaluating this argument, the administrative law judge will have to determine the scope of the existing NOCs, and determine whether and how those notices limit the arguments GSA may advance to defend the results of its audit and the resumption of offsets. Def.'s Mem. at 21. The Court is persuaded by defendant's argument that there is no significant difference between the analysis the CBCA will undertake to resolve the dispute concerning the defenses available to GSA and the regulatory interpretation plaintiffs want this Court to conduct.

Plaintiffs attempt to distinguish their CBCA claims from the issues in this Court on the grounds that the CBCA claims concern only "monies previously offset" while their claims in this Court seek prospective relief from *future* offsets. Pls' Opp'n at 3. This Court rejected an identical argument in *U.S. Trading Corp. v. United States,*

1990 WL 137384 (D.D.C. September 10, 1990)("... nothing in *Spectrum [Leasing]* suggests a distinction between retroactive and prospective relief, nor would such a distinction make a difference in determining whether the claim at issue is based upon a ... contract or not.") The same is true here. Plaintiffs' claims in both forums concern the same NOCs ultimately based on the same transportation contracts. As such, the distinction between money already offset and that yet to be deducted is insufficient to place two parts of the same dispute in two separate courts. In conclusion, because any proceedings in this Court would address substantially the same issues already pending in the CBCA proceedings, it is clear that a remedy exists in "another court" such that APA section 702 does not apply.

▮ Finally, the Court rejects plaintiffs' contention that the Court of Federal Claims cannot provide an adequate remedy. While it is true that the Court of Federal Claims does not possess the broad injunctive power of this Court, that court's jurisdiction is not limited simply to interpreting government contracts as plaintiffs claim. The Court of Federal Claims has the authority to interpret the meaning of federal statutes and regulations as well as to determine whether a federal agency has complied with applicable law. *See, e.g., Groff v. U.S.,* 493 F.3d 1343 (Fed.Cir.2007)(reviewing whether a federal agency complied with the statutory requirements and the governing regulations denying claims for death benefits or whether its action was arbitrary and capri-

---

**1.** Plaintiffs' counsel represents multiple other carriers disputing Notices of Overcharge on similar grounds, 10 of which have filed claims with the CBCA on the same bases advanced here. Plaintiffs' counsel has advanced this "jurisdictional argument" in a brief filed on behalf of another carrier, American World Forwarders. The CBCA has stayed all related cases pending resolution of this issue. Plaintiffs clearly intend this argument to apply to their pending CBCA cases as well. *See* CBCA Claim of Cartwright International Vanlines at 6.

cious); *Kanemoto v. Reno*, 41 F.3d 641, 645–46 (Fed.Cir.1994)(finding that the Court of Federal Claims under its Tucker Act jurisdiction could interpret the Civil Liberties Act of 1988 and render a judgment against the United States which would "declare" the proper interpretation of the statute).

Further, the Court of Federal Claims' remedial powers are not as limited as plaintiffs contend. Plaintiffs argue that the Court of Federal Claims cannot provide an adequate remedy because the only relief it "may grant ... is a money judgment equal to the amounts offset by GSA." Pls.' Opp'n at 3. This claim is unsupportable. The Tucker Act provides that in any case within its jurisdiction, the Court of Federal Claims "shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. 1491(a)(2). The Court of Federal Claims Rules of Procedure also provide that "on its own motion, the court may in any case within its jurisdiction by order remand appropriate matters to any administrative or executive body or official." RCFC 52.2(a)(1). *See e.g., Cooley v. U.S.*, 76 Fed.Cl. 549, 558–59 (2007)(remanding matter to Social Security Administration with instructions to make certain determinations regarding an employee's entitlement to a cash award).

Thus, the Court of Federal Claims could find both that plaintiffs are owed the money they seek and that GSA's NOCs were not consistent with its regulations and remand the matter to GSA with appropriate instructions. That ruling would serve as *res judicata* in future cases against GSA, and if the Court's interpretation of GSA's regulations was affirmed by the Federal Circuit, it would be binding on future Court of Federal Claims actions. *See Kanemoto*, 41 F.3d at 646. In conclusion, the Court of Federal Claims could conduct the sought regulatory interpretation, award plaintiffs monetary relief, and instruct GSA in any manner it deems just. This remedy is entirely adequate and not significantly different from a remedy provided by this Court.

### c. Defendant's Motion to Transfer

 As an alternative to dismissal, defendant requests that this Court transfer this case to the Court of Federal Claims pursuant to its authority under 28 U.S.C. § 1631. That statute provides, in pertinent part,

> Whenever a civil action is filed in ... [district court], including a petition for review of administrative action ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred[.]

For the reasons stated above, this Court lacks subject matter jurisdiction over plaintiffs' claims. However, rather than granting defendant's motion to dismiss, the Court finds it is in the interest of justice that plaintiffs' claims be transferred to the Court of Federal Claims. This controversy is founded on government contracts and that court is the only court with jurisdiction to hear it. Furthermore, the Court finds that the Court of Federal Claims has the authority to provide complete relief. Consequently, defendant's Motion to Dismiss is **DENIED** and defendant's Motion to Transfer is **GRANTED**.

### III. CONCLUSION

For the reasons stated in this Memorandum Opinion, plaintiff's Motion for a Pre-

liminary Injunction is **DENIED**, defendant's Motion to Dismiss is **DENIED**, and defendant's Motion to Transfer this Case to the Court of Federal Claims is **GRANTED**. An appropriate Order accompanies this Opinion.